554 P.2d 1304

**V–1 OIL COMPANY, a corporation,
Plaintiff-Appellant,**

v.

**COUNTY OF BANNOCK et al.,
Defendants-Respondents.**

No. 11942.

Supreme Court of Idaho.

Oct. 5, 1976.

Ronald L. Swafford, Idaho Falls, for plaintiff-appellant.

Ronald S. George, Pocatello, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from an order dismissing plaintiff's complaint. Plaintiff's complaint sought a declaratory judgment that certain actions of the Board of County Commissioners relating to 1974 ad valorem taxes were violative of statutes governing such procedure and also sought a refund of those taxes it had paid under protest in 1974. The district court dismissed holding that plaintiff had failed to exhaust his administrative remedies. We affirm.

Plaintiff-appellant V-1 Oil's complaint alleged in its first count that the Bannock County Board of Commissioners had set tax levies in an illegal fashion in that it allegedly failed to take into account "total estimated revenues from sources other than taxation, including available surplus." It was alleged that in fact surplus funds were available to meet the county budget without a resort to a general tax levy in 1974. V-1 Oil owns personal and real property in Bannock County and paid ad valorem taxes thereon in December 1974. V-1 Oil sought a declaratory judgment that the procedures of the Board of County Commissioners violated I.C. § 31-1605, and based in part on such violation V-1 Oil sought a refund of the taxes it had paid under protest.

The pertinent statute provides that the Board of County Commissioners shall set a tentative budget, conduct hearings and adopt a final budget specifying the funds from which expenditures shall be drawn and:

"Thereafter, at the time provided by law, the Board of County Commissioners shall fix levies necessary to ·raise the amount of expenditures as determined by the adopted budget, less the total estimated revenues from sources other than taxation, including available surplus, as determined by the Board, and such expenditures as are to be made with the proceeds of authorized bond issues." I. C. § 31-1605.

Assuming, but not deciding, that appellant's complaint sufficiently alleges a violation of I.C. § 31-1605, nevertheless, it is clear under I.C. § 31-1509 that appellant here did not timely take an appeal from the action of the County Commissioners and a collateral attack in the fashion sought here is impermissible. I.C. § 31-1509 provides:

"[A]ny time within twenty (20) days after the first publication or posting of the statement, as required by section 31-819, an appeal may be taken from any act, order or proceeding of the board [of county commissioners], by any person aggrieved thereby, or by any tax payer

of the county * * * *when he deems any such act, order or proceeding illegal or prejudicial to the public interests.*" (emphasis added)

Appellant V-1 Oil while conceding it did not so appeal within 20 days argues that its time for appeal therein is determined by I. C. § 63-2213 as being appealable within 60 days of payment of taxes under protest. We disagree. *See, Fenton v. Board of County Commissioners*, 20 Idaho 392, 119 P. 41 (1911); *Rogers v. Hays*, 3 Idaho 597, 32 P. 259 (1893); *Bobbitt v. Blake*, 25 Idaho 53, 136 P. 211 (1913). We also note I.C. § 63-2202 as interpreted in *Franden v. Jonasson*, 95 Idaho 792, 520 P.2d 247 (1973). Therein we held that a Board of County Commissioners should be given the opportunity to correct its own mistakes and that compliance with that statute was a condition precedent to an action in the district court for declaratory judgment.

V-1 Oil also asserts that the tax-payer's declaration form provided to V-1 by the assessor prior to the assessment did not state when the meetings of the Board of Equalization were scheduled and that it "failed to inform the plaintiff of the full market value and the assessed value of the property" and of the "factual basis, if any of said assessment and valuation." I.C. § 63-203 makes clear the purpose of the form is to provide *the assessor* with adequate information *from the taxpayer*. Although appellant V-1 Oil relies upon I.C. § 63-212, such statute is inapposite here since it deals with an entirely different notice given after assessment has been made.

Appellant argues that certain of its counts relate to acts of assessment and points out the market value of some of appellant's personal property was multiplied by three for the purposes of assessment although other property assessed in Bannock County was not. Also, all of appellant's personal property was assessed at a 20 percent of its market value ratio whereas real property in the county was assessed at a 16.6 percent rate. Those allegations simply allege excessive assessments on appellant's personal property. There is no contention that the assessor lacked authority to assess the property in some amount and we have repeatedly held such questions must be pursued in the statutory administrative process designed for that purpose prior to seeking relief in the district court by way of a declaratory judgment or refund. I.C. §§ 63-401, 63-1214, 63-2202, 63-2210, 63-3812, 63-2213; *Franden v. Jonasson, supra; In re Felton's Petition*, 79 Idaho 325, 316 P.2d 1064 (1957); *Washburn-Wilson Seed Co. v. Jerome Co.*, 65 Idaho 1, 138 P.2d 978 (1943). We note further that at the time that the assessment was made herein, triple assessments were expressly authorized by statute in certain circumstances. *See* I.C. § 63-207. Appellant here has in fact been subjected to that treatment in the past. *See V-1 Oil Co. v. Lacy*, 97 Idaho 468, 546 P.2d 1176 (1976). On appeal, in the absence of any issue adequately framed, we assume the proper performance of duties by the assessor. *Chastain's Inc. v. Tax Commission*, 72 Idaho 344, 241 P.2d 167 (1952).

Appellant also argues that some of its personal property was assessed for taxation notwithstanding that it was business inventory and thus exempt under the provisions of I.C. § 63-105Y. I.C. § 63-402 provides:

"It is hereby made the duty of the board of county commissioners, at the meeting prescribed in the preceding section, to enforce and compel a proper classification and assessment of all property required under the provisions of this act to be entered upon the real property assessment roll and personal property assessment roll, and in so doing the board shall examine such real property assessment roll, and shall raise or cause to be raised, or lower or cause to be lowered, the assessment of any property which, in the judgment of the said board, has not been lawfully assessed. The board must determine all complaints in regard to the full cash value or assessed value of any

property entered upon said rolls, and must, except as prohibited in this act, correct any valuation entered upon said rolls.

"*The board must examine and act upon all claims for exemptions filed in accordance with the provisions of this act, and must either allow or disallow the same in the manner provided by law.*" (emphasis added)

That statute expressly provides the Board of County Commissioners with authority to correct any error by the assessor, and such statutory remedy is fully adequate and the forum readily accessible. Actions for declaratory judgment are not intended as a substitute for a statutory procedure and such administrative remedies must be exhausted. *See, City of Cheyenne v. Sims,* 521 P.2d 1347 (Wyo.1974); *Palmer v. Perkins,* 119 Colo. 533, 205 P.2d 785 (1949). It is clear that *Security Abstract & Title Co. v. Leonardson,* 74 Idaho 528, 264 P.2d 1027 (1953), is not applicable to the case at bar. There it was expressly noted,

"The question here presented is not the equalization of a valid tax levied, *nor whether appellant is or is not exempt from taxation.*" (emphasis added)

*Leonardson* rather dealt with a conflict of statutes one of which exempted the property in question and one of which did not.

■ We turn now to the final count of plaintiff's complaint which requires discussion herein. Appellant therein alleged that the valuation statement provided by the assessor contained an unclear description of the property assessed and therefore appellant was unable to determine whether property not owned by appellant was also being taxed to him. Appellant does not claim a lack of receipt of notice of the impending taxation but only that if it had received a sufficiently clear description of the property taxed, appellant might have found that the assessment was excessive or that some property was erroneously included therein. *See,* I.C. §§ 63–220, 63–1103. In *Franden v. Jonasson, supra,* in which a

similar claim was made, the Court held that such circumstances did not authorize the instigation of a suit when appellant had failed to first resort to the statutorily authorized administrative remedies.

■ In this same final count appellant also alleged the failure of the warrants of distraint and tax receipts to adequately and sufficiently describe the property. I.C. §§ 63–1304, 63–1105, 63–220. Since the issuance of the warrant of distraint and the tax receipt occur at a point in time after the completion of any of the heretofore mentioned administrative remedies, those statutory procedures cannot be said to contemplate remedying inadequate descriptions contained in warrants of distraint or tax receipts. No other statutory method of remedying such inadequacy is provided. However, this would in no way provide appellant with any relief from its claim that the county did not correctly conduct its fiscal affairs and the appellant's property was improperly or excessively taxed. Plaintiff-appellant alleged no harm or damage in the future. The claim of inadequate description of the property on these two documents might serve as a basis for relief in the future if the county sought to again collect these same 1974 taxes. No such claim is made or alleged. Thus, a suit for declaratory judgment on this count was inappropriate, and therefore the district court did not abuse its lawful discretion in dismissing it. *See,* I.R.C.P. 57; *Anderson,* "Actions for Declaratory Judgments," (2nd ed. 1951) Vol. 1, § 186, pp. 369–370.

The order of the district court dismissing plaintiff's complaint is affirmed. Costs to respondent.

McFADDEN, C. J., DONALDSON, J., and SCOGGIN, D. J. (Ret.) concur.

BAKES, Justice, concurring in part and concurring in result in part:

I concur in that portion of the majority opinion discussing the appellant's claim for a tax refund. However, I disagree with the majority's analysis affirming the dis-

trict court's denial of the appellant's prayer for declaratory judgment which sought a determination that the county's practice of not reducing tax levies to take into account the availability of county surplus funds at the end of the fiscal year was in violation of I.C. § 31–1605. I believe that at the time this case was before the district court the district court erred in dismissing this declaratory judgment claim. However, I concur in the result of the majority only because the legislature has since mooted this question by amendment of that section and the enactment of a new section, I.C. § 31–1605A, which together authorize the county to carry surpluses forward from one year to the next in order to operate upon a cash basis.

I.C. § 10–1202, § 2 of the Uniform Declaratory Judgment Act, provides:

"*10–1202. Person interested or affected may have declaration.*—Any person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder."

In its complaint V–1 Oil alleged that it paid taxes in Bannock County and that in 1974 the Bannock County Commissioners had set the budget without reducing their total tax levy by the amount of the surplus the county had carried forward from the previous year, i. e., the county would carry a surplus forward from one year to the next. The appellant asked for a declaratory judgment whether this was in violation of I.C. § 31–1605, which then provided in part:

"[T]he board of county commissioners shall fix the levies necessary to raise the amount of expenditures as determined by the adopted budget, less the total estimated revenues from sources other than taxation, *including available surplus,* . . . ." (Emphasis added).

The appellant's rights as a taxpayer, and the rights of every other taxpayer in Bannock County, were affected by the legality of the commissioners' practice of carrying a surplus forward from one year to the next rather than lowering or eliminating taxes until the surplus was expended. I.C. § 10–1202 clearly gives any taxpayer the right to determine the legality of that practice. The statute having conferred this right upon the taxpayer, it cannot be lost because the taxpayer has joined his declaratory judgment action with a claim for a tax refund upon which relief cannot be granted because the taxpayer has failed to exhaust his administrative remedies.

The majority characterizes this action for declaratory judgment as a collateral attack upon the tax assessment of V–1's property. It is not. The declaratory judgment count did not ask for a tax refund; it merely asked for a declaration whether the county commissioners had adopted the 1974 budget in violation of statute. So long as the statutes remained unchanged, the question of whether the budget had been adopted in violation of statute was a recurring one and should have been decided. The majority says, however, that the district court had discretion to dismiss a declaratory judgment count, apparently upon the basis that the appellant alleged no harm or damage in the future. The is contrary to the clear mandate of statute. I.C. § 10–1201, § 1 of the Uniform Declaratory Judgment Act, provides in part:

"*10–1201. Declaratory judgments authorized*— . . . Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, *whether or not further relief is or could be claimed.* . . . ." (Emphasis added).

This section does not give the district court discretion to refuse to hear a prayer for declaratory relief on the ground that the plaintiff has not alleged future harm or damage. The only section which sets forth a ground upon which a court may

refuse to enter declaratory judgment is I. C. § 10–1206, § 6 of the Uniform Declaratory Judgment Act:

"*10–1206. When court may refuse judgment or decree.*—The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."

At the time the district court considered this matter, the portions of I.C. § 31–1605 quoted above were still in effect and had not been amended. A declaratory judgment at that time would have ended the recurring controversy concerning whether counties could carry forward cash surpluses from year to year without reducing taxes by the amount of the surplus. This was not a case in which there was a statutory ground for the court to refuse to enter judgment. Accordingly, I believe the district court erred in refusing to give declaratory judgment upon the first count.

However, 1976 I.S.L., ch. 45, §§ 13 and 14, amended I.C. § 31–1605 and added a new section, I.C. § 31–1605A, to allow counties to carry over surplus funds from year to year "sufficient to achieve or maintain county operations on a cash basis." The statute having been amended, "the uncertainty or controversy giving rise to the proceeding," i. e., the question of the legality of county budgeting carrying surpluses forward from year to year, appears to have been eliminated and therefore the matter need not be remanded to the district court for further proceedings.